IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1635-06






HECTOR CASTRO, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


YOUNG COUNTY





 Meyers, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Appellant was charged with manufacture of methamphetamine. Prior to trial, he
filed a motion to suppress evidence, which the trial court denied. Appellant pleaded guilty
and was sentenced to 60 years' imprisonment and a $1000 fine. Appellant appealed the
trial court's denial of his motion to suppress evidence and the court of appeals reversed the
conviction. Castro v. State, 202 S.W.3d 348 (Tex. App.-Ft. Worth 2006). We granted the
State's petition for discretionary review to determine whether the court of appeals failed to
defer to the trial court's implied fact findings, and whether a statement that a suspect failed
to signal a lane change is a subjective conclusion or an objective fact. We hold that failure
to signal a lane change is an objective determination, and the court of appeals erred in
failing to defer to the trial court's ruling. We reverse the judgment of the court of appeals.

FACTS


 Deputy Bailey, a Young County Narcotics Task Force Officer, was called to a house
to investigate a suspected drug lab. Because Appellant was the primary suspect, Deputy
Bailey asked Olney police officers to be on the lookout for Appellant. An Olney police
officer called Deputy Bailey and told him that Appellant was a passenger in a car that had
been pulled over. Deputy Bailey went to the scene of the traffic stop and was informed that
the driver had been pulled over for failure to signal a lane change. (1) Appellant was in the
backseat of the car, crouched down with a jacket over his head. Officers observed, on the
front floorboard of the car, a black bag that had been seen earlier at the suspected drug lab. 
Deputy Bailey searched the bag and found narcotics. Appellant was then arrested. 

 He filed a motion to suppress the evidence found in the car, alleging that the initial
traffic stop was unlawful. At the suppression hearing, Deputy Bailey was the only witness. 
The following is the testimony related to the stop: 

[DEFENSE] And it's your testimony that the stop was made because of information that you
had given to the Olney Police Department?

[WITNESS] No, sir, not the reason for the stop.

[DEFENSE] What was the reason for the stop?

[WITNESS] I was told the reason for the stop was failure to signal a lane change.

[DEFENSE] And is it your testimony today before this court that any failure to signal a lane
change is a violation of the law?

[WITNESS] Within a hundred feet before turning.

[DEFENSE] But you were not there to see if they were turning or not. Correct?

[WITNESS] No, sir.

[DEFENSE] So you don't know what the circumstances were as far as the driver's signaling
and what the drive[r] was doing. Correct?

[WITNESS] Right.

[DEFENSE] So is it your testimony here today that failure to signal a lane change is a
violation of the law in all circumstances?

[WITNESS] No, sir. I was just told that was the reason the car was stopped.

[DEFENSE] So there could be circumstances where it would be legitimate for an officer to
stop and arrest somebody for not signaling a lane change. Correct?

[WITNESS] Yes, sir.

[DEFENSE] And there would be circumstances where it would not be lawful for the officer
to arrest the person for not signaling a lane change. Correct?

[WITNESS] It would be kind of a situational type.

[DEFENSE] And you don't know the situation?

[WITNESS] Well, when you're changing and like that shoulder is marked, it has a line there,
it's marked, and when you're going to change lanes you should give a signal.

[DEFENSE] But you weren't there. You don't know what the circumstances were as to what
actually happened. Correct?

[WITNESS] No, sir.

[DEFENSE] And it's your testimony that not every failure to signal a lane change would
result in probable cause to arrest somebody. Correct?

[WITNESS] Possibly.

[DEFENSE] Do you know?

[WITNESS] It depends on the situation.

The trial court did not file findings of fact or make an explicit ruling. However, the court 
clearly denied the motion, stating to Appellant at his plea hearing, "I'm relatively sure that
you're going to appeal the Court's ruling on the Motion to Suppress, so for purposes of the
record, you do have the Court's consent to appeal that decision." Appellant appealed the
trial court's denial of his motion to suppress. 

 The court of appeals reviewed de novo whether the search was reasonable, giving
deference to the trial court's implicit findings of fact that are supported by the record. The
court pointed out that the officer who observed the traffic violation did not testify, and
Deputy Bailey's testimony did not include any specific details regarding the stop. Castro,
202 S.W.3d at 356. The court presumed that the traffic violation about which Deputy
Bailey testified was either a failure to signal when changing lanes or a failure to signal
within one hundred feet of turning. Id. at 357. Citing our holding in Ford v. State, 158
S.W.3d 488 (Tex. Crim. App. 2005), the court of appeals determined that the record did not
contain sufficient objective facts to support a finding of reasonable suspicion. Castro, 202
S.W.3d at 358. The court of appeals held that the trial court abused its discretion in
denying the motion to suppress and reversed the decision of the trial court. Id. at 359. 

ARGUMENTS OF THE PARTIES

 The State argues that, by characterizing Deputy Bailey's testimony that the driver
failed to signal a lane change as ambiguous, subjective, and conclusory, the court of appeals
failed to view the record in the light most favorable to the trial court's implicit findings. 
The State also argues that the court of appeals misconstrued Ford and improperly
considered whether the driver failed to signal within one hundred feet of turning when there
was no testimony that the driver committed any offense relating to a turn as opposed to a
lane change. The State points out that failing to signal a lane change is a violation that is not
ambiguous or subject to different interpretations, but the court read ambiguity into the
testimony and speculated about an alternative reason for the stop, thereby failing to give
proper deference to the trial court's implied finding. Additionally, the State contends that
the implied finding that the driver was stopped for changing lanes without signaling is
supported by the record. The State points out the differences between the offense in Ford,
following too closely, and the offense of failing to signal a lane change, stating that the
testimony in Ford was an opinion or a judgment call based on the officer's observations
about the vehicle's speed, the amount of traffic, and the road conditions, while whether a
driver has signaled a lane change is not a matter of opinion or a judgment call. Additionally,
unlike the statute prohibiting following too closely, there is no subjectivity built into the
statute regarding changing lanes without signaling. 

 Appellant states that the only issue presented here is whether Ford applies to this
case. He contends that Ford held that testimony that is conclusory in nature is not
sufficient and that it requires specific, articulable facts for the State to establish the
reasonableness of a stop. The trial court's implicit findings of fact are entitled to
deference only if they are supported by the record. And, sufficiently reliable information
to constitute reasonable suspicion is supported by the record only when the record contains
testimony including specific, articulable facts that would lead the officer to reasonably
conclude that a person engaged in criminal activity. Appellant states that Ford requires that
the record upon which the trial court based its decision in denying a motion to suppress
include facts of such specific nature as to allow an appellate court to determine the
circumstances upon which an officer could reasonably conclude that a suspect was actually
engaging in criminal activity, or had been, or soon would be. He argues that the officer who
testified was unable to provide sufficient facts about the alleged violation to support the
trial court's implied finding. Appellant states that the fact that the testimony was hearsay is
not the problem, rather it is the insufficiency of the testimony presented by an officer who
did not observe the violation. Finally, Appellant argues that Ford applies regardless of the
nature of the offense on which the stop is based because the trial judge must make an
independent assessment of the reasonableness of police action in all stop cases. While
more detail may be required to support an implied finding that an officer had grounds to
stop for following too closely than to support a finding that an officer had grounds to stop
for an unsignaled lane change, both findings must be based on specific, articulable facts
found in the record. 

ANALYSIS

 When the police conduct a warrantless search and seizure, the burden is on the State
to show that the officer had reasonable suspicion to believe that an individual was violating
the law. Reasonable suspicion exists if the officer has specific, articulable facts that, when
combined with rational inferences from those facts, would lead him to reasonably conclude
that a particular person actually is, has been, or soon will be engaged in criminal activity. 
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). A reasonable-suspicion
determination is made by considering the totality of the circumstances, giving almost total
deference to the trial court's determination of historical facts and reviewing de novo the
trial court's application of the law to facts not turning on credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the trial court did
not make explicit findings of fact in this case, we review the evidence in a light most
favorable to the trial court's ruling and assume that the trial court made implicit findings of
fact supported by the record. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App.
2002).

 In Ford, we considered whether a trial court erred in denying a motion to suppress
evidence based on the officer's statement that he observed the driver violate the statute
prohibiting following too closely. See Tex. Transp. Code § 545.062(a). The officer did
not give any basis for this opinion, such as the approximate distance between the cars, the
speed at which they were traveling, the conditions of the road, traffic conditions, or
whether the driver would have been able to safely stop if necessary. Discussing the
officer's opinion that Ford committed a traffic violation, we stated:

 [W]ithout specific, articulable facts, a court has no means in assessing
whether this opinion was objectively reasonable. When a trial court is not
presented with such facts, the detention cannot be subjected to the more
detached, neutral scrutiny of a judge who must evaluate the reasonableness of
a particular search or seizure in light of the particular circumstances. And
when such a stop is not based on objective criteria, the risk of arbitrary and
abusive police practices exceeds tolerable limits. Allowing a police
officer's opinion to suffice in specific facts' stead eviscerates Terry [v.
Ohio]'s reasonable suspicion protection. If this Court were to hold as the
dissent suggests, we would be removing the "reasonable" from reasonable
suspicion.[ (2)] Therefore, we adhere to the principle that specific, articulable
facts are required to provide a basis for finding reasonable suspicion. Mere
opinions are ineffective substitutes for specific, articulable facts in a
reasonable-suspicion analysis.

Ford, 158 S.W.3d at 493 (citations omitted). 

 The statute at issue in Ford, Transportation Code Section 545.062(a), lists factors
to consider to determine whether a car is following too closely, including the speed of the
vehicles, traffic, the conditions of the highway, and whether the driver could safely stop. 
Therefore, the statute makes the assessment of that violation a subjective determination. 
That is not the case here. Either a driver signals when changing lanes or he does not. (3) 
Probable cause can be established by objective facts or subjective opinions. In the case of
subjective opinions, we follow our holding in Ford, that the officer must give specific,
articulable observations to support his opinion. We acknowledge the difference between a
conclusory statement and specific, articulable facts. However, in cases involving offenses
such as failure to signal a lane change, a court can determine whether an officer's
determination that a driver committed a traffic violation was objectively reasonable without
being presented with a detailed account of the officer's observations. We agree with Ford
that opinions are not an effective substitute for specific, articulable facts in a reasonable-suspicion analysis when the nature of the offense requires an officer to make a subjective
determination. Ford, 158 S.W.3d at 493. Following too closely, speeding, and being
intoxicated, can be examples of such subjective determinations. Failure to signal a lane
change is not. Therefore, the court of appeals misapplied Ford. 

 The determination of whether a driver signaled a lane change is a simple one. The
only two possibilities in this case are: either the trial judge believed Deputy Bailey's
testimony that another officer observed the driver change lanes without signaling, or the
trial judge did not believe that the driver was observed changing lanes without signaling. 
Based on the denial of the motion to suppress the evidence, it is clear that the judge
believed the testimony that was presented. The trial judge was in the best position to
observe the credibility and demeanor of the witness, and it was not unreasonable for the
trial judge to credit Deputy Bailey's testimony and conclude that the driver was stopped for
a traffic violation. The court of appeals implies that the officer's use of the term "vehicle"
was insufficient to determine whether the driver was required to have electric turn-signal
lamps or if he was permitted to use hand signals to indicate a turn or lane change. Castro,
202 S.W.3d at 357. However, it was not unreasonable for the trial court to assume that
"vehicle" and "signal" had their most common meanings, and that the vehicle in question
was one that had electric turn-signal lamps that the driver failed to use.

 The court of appeals says that the officer's cursory testimony reflects that the
alleged traffic violation could be either failure to signal within one hundred feet of turning
or failure to signal a lane change. As we stated above, considering the evidence in the light
most favorable to the trial court's ruling, the denial of the motion to suppress would
indicate that the trial court believed that the officer gave sufficient information that the
driver failed to signal a lane change. The trial judge decides what to believe and what
information to disregard, and he obviously disregarded the superfluous information that
Deputy Bailey mentioned regarding signaling within one hundred feet before turning. The
trial court also could have concluded that the information regarding the stop was not
specific enough to determine whether it was reasonable and granted the motion to suppress. 
It was within the trial court's discretion to believe or disbelieve the testimony and use it as
a basis for the ruling on the motion to suppress. The trial court chose to believe the
testimony. The court of appeals erred in failing to defer to the trial court's reasonable
ruling.

 We also disagree with the court of appeals' implication that only the officer who
actually observed the traffic violation can testify. Castro, 202 S.W.3d at 359, note 10. 
Hearsay information is sufficient to support a fact or an opinion at a suppression hearing. 
Granados v. State, 85 S.W.3d 217 (Tex. Crim. App. 2002). While the officer who
observed the traffic violation may be able to give more specific details regarding the reason
for the stop, as we have stated, in the case of offenses requiring only an objective
determination of whether the offense was indeed committed, the court does not need to
know the subjective details of the stop from the officer's standpoint in order to find that the
stop was reasonable. 

 Finally, we note that this issue is less likely to occur in the future due to our
decision last year in State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006), in which we
held that, upon request by the losing party in a motion to suppress evidence, a trial judge
must enter findings of fact and conclusions of law so that the appellate courts can better
review the decision of the trial court without speculating about the reasons for the trial
court's decision.

CONCLUSION


 The court of appeals failed to defer to the trial court's implied findings of fact and
improperly extended Ford to statutes involving violations that are not based on an officer's
subjective opinion. The judgment of the court of appeals is reversed.


 Meyers, J.

Delivered: June 27, 2007

Publish
1. Texas Transportation Code section 545.104 states that:


(a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn,
change lanes, or start from a parked position.

(b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last
100 feet of movement of the vehicle before the turn.
2. The dissent in Ford suggests that the type of testimony at issue in that case was an opinion
based on the witness' perception, which should be governed by Rule of Evidence 701. Rule 701 states
that, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or
inferences is limited to those opinions or inferences which are (a) rationally based on the perception of
the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a
fact in issue." See Ford, 158 S.W.3d at 496-97 (Keller, P.J., dissenting).
3. We acknowledge that a situation involving hand signals may require more of a subjective
determination by an officer. However, as we have stated, there is no indication that hand signals were
involved in this case.